Citation Nr: 1220801 
Decision Date: 06/14/12 Archive Date: 06/22/12

DOCKET NO. 09-08 805 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Whether new and material evidence has been submitted to reopen a service connection claim for a bilateral hearing loss disability. 

2. Whether new and material evidence has been submitted to reopen a service connection claim for chronic obstructive pulmonary disease. 

3. Entitlement to service connection for tinnitus.

4. Entitlement to service connection for benign prostatic hypertrophy. 


REPRESENTATION

Appellant represented by: Disabled American Veterans




ATTORNEY FOR THE BOARD

Thomas D. Jones, Counsel


INTRODUCTION

The Veteran served on active duty from February 1968 to March 1970. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from September 2008 and November 2009 rating decisions of a Regional Office (RO) of the Department of Veterans Affairs (VA). 

Within his February 2009 and April 2010 VA Form 9s, the Veteran requested a hearing before a Veterans Law Judge. This hearing request was subsequently withdrawn by the Veteran within a November 2010 written statement. 


FINDINGS OF FACT

1. The Veteran had military service in Vietnam and his exposure to herbicides is presumed.

2. In a November 2006 rating decision, the RO denied the Veteran's claims for entitlement to service connection for a bilateral hearing loss disability and for chronic obstructive pulmonary disease. The Veteran was notified of this decision in December 2006. 

3. The Veteran did not initiate an appeal of the November 2006 rating decision as to the issues of entitlement to service connection for bilateral hearing loss and for chronic obstructive pulmonary disease. 

4. Evidence received since the November 2006 rating decision as to the issue of entitlement to service connection for a bilateral hearing loss disability is essentially cumulative.

5. Evidence received since the November 2006 rating decision as to the issue of entitlement to service connection for chronic obstructive pulmonary disease is essentially cumulative.

6. Benign prostate hypertrophy did not manifest in service, is unrelated to service, and may not be presumed as having been incurred therein.

7. Tinnitus did not manifest in service or for many years thereafter, and is unrelated to service.


CONCLUSIONS OF LAW

1. The November 2006 rating decision that denied entitlement to service connection for a bilateral hearing loss disability is final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. § 20.1103 (2011). 

2. The November 2006 rating decision that denied entitlement to service connection for chronic obstructive pulmonary disease is final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. § 20.1103 (2011). 

3. Evidence received since the November 2006 rating decision is not new and material and reopening of the claim for service connection for a bilateral hearing loss disability is therefore not warranted. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (2011).

4. Evidence received since the November 2006 rating decision is not new and material and reopening of the claim for service connection for chronic obstructive pulmonary disease is therefore not warranted. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (2011).

5. Benign prostatic hypertrophy was not incurred in or aggravated by service, and may not be presumed to have been incurred therein. 38 U.S.C.A. §§ 1110 , 1116, 1113, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102 , 3.303 (2011). 

6. Tinnitus was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Veterans Claims Assistance Act of 2000

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating a claim for VA benefits, as codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2011). For the reasons to be discussed below, the Board finds that VA has satisfied its duties to the appellant under the VCAA. A VCAA notice consistent with 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. See Quartuccio v. Principi, 16 Vet. App. 183 (2002). VCAA notice requirements apply to all five elements of a service connection claim: (1) veteran status; (2) existence of disability; (3) connection between service and the disability; (4) degree of disability; and (5) effective date of benefits where a claim is granted. Dingess v. Nicholson, 19 Vet. App. 473, 484 (2006).

VA has made all reasonable efforts to assist the Veteran in the development of his claims, has notified him of the information and evidence necessary to substantiate the claims, and has fully disclosed VA's duties to assist him. In April 2008 and October 2009 letters, the Veteran was notified of the information and evidence needed to substantiate and complete the claims on appeal. Additionally, these letters provided him with the general criteria for the assignment of an effective date and initial rating. Id. 

The Board notes that, in the present case, initial notice was issued prior to the adverse determinations on appeal; thus, no timing issue exists with regard to the notice provided the claimant. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The Board also notes the Veteran seeks to reopen several service connection claims previously denied by VA. In the context of such claims, the VCAA notice must include the evidence and information that is necessary to reopen the claims and the evidence and information that is necessary to establish the underlying claims for the benefit sought. See Kent v. Nicholson, 20 Vet. App. 1 (2006). In the present case, the April 2008 and October 2009 letters indicated the bases of the prior denials of the service connection claims the Veteran wished to reopen, as well as the evidence and information necessary to reopen those claims. Thus, remand for further VCAA notice on this basis is not required. 

Finally, the Board notes that the Veteran is represented by a veterans service organization (VSO) and that organization is presumed to have knowledge of what is necessary to substantiate a claim for VA benefits. Neither the Veteran nor his representative have pled prejudicial error with respect to the content or timing of any VCAA notice. See Shinseki v. Sanders, 129 U.S. 1696 (2009).

The Board further finds that VA has complied with the duty to assist by aiding the appellant in obtaining evidence. It appears that all known and available records relevant to the pending appeal have been obtained and are associated with the Veteran's claims files. The RO has obtained the Veteran's service treatment records, as well as VA and non-VA medical records. He has also been afforded a VA medical examination in October 2006 as to the issue of service connection for tinnitus. The Board notes that the VA medical evidence contains sufficiently specific clinical findings and informed discussion of the pertinent history and clinical features of the disability on appeal and is adequate for purposes of this appeal. The Board is not aware, and the Veteran has not suggested the existence of, any additional pertinent evidence not yet received. 

The Board notes that no medical examination has been conducted and/or medical opinion obtained with respect to the Veteran's service connection claim for benign prostatic hypertrophy. The Board finds that the record, however, which does not contain any indication of a nexus between service and the disorder at issue, warrants the conclusion that a remand for an examination and/or opinion is not necessary to decide that claim. See 38 C.F.R. § 3.159(c)(4); see also McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

The Veteran submitted new evidence directly to the Board in April 2011, along with a waiver of agency of original jurisdiction (AOJ) review of this evidence; thus, his appeal need not be remanded for RO consideration of this evidence. See 38 C.F.R. § 20.1304. 

Based on the foregoing, the Board finds that the Veteran has not been prejudiced by any failure of VA in its duties to notify and assist him, and that any such violations could be no more than harmless error. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004). In any event, the Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination). Thus, adjudication of his claims at this time is warranted. 

II. New and material evidence

The Veteran seeks to reopen service connection claims for chronic obstructive pulmonary disease and for hearing loss. Generally, a claim which has been denied in a final unappealed rating decision, or a rating decision that was appealed but was not perfected, may not thereafter be reopened and allowed. 38 U.S.C.A. § 7105(c),(d)(3); 38 C.F.R. § 20.1103. 

An exception to this rule is 38 U.S.C.A. § 5108 , which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, VA shall reopen the claim and review the former disposition of the claim.

For applications to reopen received after August 21, 2001, such as the present applications, new evidence is defined as existing evidence not previously submitted to agency decisionmakers. Material evidence means evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence previously of record, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

In determining whether evidence is new and material, the credibility of the evidence is generally presumed. Justus v. Principi, 3 Vet. App. 510, 512-513 (1992). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held, however, that evidence that is merely cumulative of other evidence in the record cannot be new and material even if that evidence had not been previously presented. Anglin v. West, 203 F.3d 1343, 1347 (2000). 

In deciding whether new and material evidence has been submitted the Board looks to the evidence submitted since the last final denial of the claim on any basis. Evans v. Brown, 9 Vet. App. 273, 285 (1996). The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." Shade v. Shinseki, 24 Vet. App. 110, 117 (2010). 

a. Bilateral hearing loss disability

The Veteran seeks to reopen his service connection claim for bilateral hearing loss. Within a November 2006 rating decision, service connection for a bilateral hearing loss disability was denied, and the Veteran was afforded notice of this decision the following month, in December 2006. The Veteran did not initiate an appeal of this determination, and it became final. 38 U.S.C.A. § 7105. 

For VA purposes, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, and 4000 Hertz are 26 decibels or greater; or speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. 

Within the November 2006 rating decision, the RO determined that while the Veteran met VA criteria for a current diagnosis of a bilateral hearing loss disability, this disability was not shown in service, or was otherwise related to any disease or injury incurred therein. The evidence considered included service treatment records as well as post-service VA treatment records, including a diagnosis of sensorineural hearing loss. 

The Board notes that additional evidence was received within a year of the November 2006 rating decision. Generally, new and material evidence received prior to the expiration of the appeals period will be considered as having been received in connection with the claim that was pending at the beginning of the appeals period. 38 C.F.R. § 3.156(b). In the present case, the Veteran submitted a copy of a June 2006 VA clinical notation reflecting a current diagnosis of sensorineural hearing loss. This clinical record was already of record at the time of the November 2006 rating decision, and is therefore not new and material. 

Since the prior denial of the claim, recent evidentiary submissions have included VA medical treatment records dated since 2006 to the present and statements from the appellant.

Having reviewed the recent evidentiary submissions, the Board find that new and material evidence to reopen the claim for service connection for a bilateral hearing loss disability has not been presented. The evidence is neither new nor material as it does not tend to cure any prior evidentiary defect. Subsequent VA treatment records received since the November 2006 denial confirm only that the Veteran has a current diagnosis of a bilateral hearing loss disability. A current diagnosis was previously conceded by the RO within the November 2006 rating decision. The additional evidence most recently received continues to show a lack of in-service treatment for or diagnosis of hearing loss, as well as a lack of evidence of a nexus to service. Thus, although the threshold is low for reopening a claim, that threshold has not been met in this case. 

The Board has also considered the Veteran's statements, such as those within the February 2009 VA Form 9, that his hearing loss has existed since service. The Board notes, however, that these allegations are essentially cumulative and redundant of evidence already received and considered by VA, as such contentions were made prior to the November 2006 denial. Therefore, the Veteran's service connection claim may not be reopened based upon his allegations of in-service onset of his hearing loss. 

In the absence of new and material evidence, the Veteran's service connection claim for a bilateral hearing loss disability may not be reopened, and his application to reopen must be denied. 

b. Chronic obstructive pulmonary disease

The Veteran seeks to reopen his service connection claim for chronic obstructive pulmonary disease. Within a November 2006 rating decision, service connection for chronic obstructive pulmonary disease, claimed as shortness of breath, was denied, and he was afforded notice of this decision the following month, in December 2006. The Veteran did not initiate an appeal of this determination, and it became final. 38 U.S.C.A. § 7105. 

Within the November 2006 rating decision, the RO determined that while the Veteran had a current diagnosis of chronic obstructive pulmonary disease, this disability was not shown in service, or was otherwise related to any disease or injury incurred therein. The RO also determined that chronic obstructive pulmonary disease was not among the disabilities for which service connection was presumed for veterans with confirmed herbicide exposure. As a veteran with confirmed service in Vietnam between 1962 and 1975, his exposure to herbicides is presumed. 38 U.S.C.A. § 1116; 38 C.F.R. § 3.309. The evidence considered by the RO in November 2006 included service treatment records as well as post-service VA treatment records. 

The Board notes that additional evidence was received within a year of the November 2006 rating decision. Generally, new and material evidence received prior to the expiration of the appeals period will be considered as having been received in connection with the claim that was pending at the beginning of the appeals period. 38 C.F.R. § 3.156(b). In the present case, VA received various 2007 VA clinical records reflecting a current diagnosis of chronic obstructive pulmonary disease and a possible pulmonary nodule. While these specific clinical records were not of record at the time of the November 2006 rating decision, other medical evidence had previously been received confirming a current diagnosis of chronic obstructive pulmonary disease, and such a fact had been conceded by VA. These records are therefore not new and material. 

Since the prior denial of the claim, the additional evidence received includes VA and private medical treatment and other records, as well as statements from the appellant. 

Having reviewed the recent evidentiary submissions, the Board find that new and material evidence to reopen the claim for service connection for chronic obstructive pulmonary disease has not been presented. The evidence is neither new nor material as it does not tend to cure any prior evidentiary defect. Subsequent VA and private treatment records confirm only that the Veteran has a current diagnosis of chronic obstructive pulmonary disease. A longstanding history as a smoker has also been noted. Nevertheless, a current diagnosis was previously conceded by the RO within the November 2006 rating decision. The additional evidence most recently received continues to show a lack of in-service treatment for or diagnosis of chronic obstructive pulmonary disease, as well as a lack of evidence of a nexus to service. Thus, although the threshold is low for reopening a claim, that threshold has not been met in this case. 

Recently submitted is a copy of a VA Form 10-20681-2, dated in July 1980. This report appears to summarize the Veteran's herbicide exposure during service in Vietnam. The fact that he had been in Vietnam has previously been established. It does not, however, indicate a respiratory disability at that time, or otherwise suggest a nexus between his chronic obstructive pulmonary disease and any incident of service. For this reason, this report, although not previously of record, is nevertheless cumulative and redundant of evidence previously considered. At the time of the November 2006 denial, the RO had conceded the Veteran's herbicide exposure during service, and the July 1980 report does not otherwise enhance that presumption. Likewise, a February 2011 private treatment record noted the Veteran's Agent Orange exposure during service via an indication of "Agent Orange questions," but does not otherwise suggest a nexus between herbicide exposure and his chronic obstructive pulmonary disease, or that such a nexus is plausible. 

The Board is also aware that additional disabilities have been recently added to the list of disabilities for which service connection is presumed in veterans with confirmed herbicide exposure. See 75 Fed. Reg. 53202 (August 31, 2010). The additional disabilities do not, however, include chronic obstructive pulmonary disease, or a related respiratory disability. 

The Board has also considered the Veteran's statements, such as those within the February 2009 VA Form 9, that his chronic obstructive pulmonary disease is related to herbicide exposure during service. The Board notes, however, that these allegations are essentially cumulative and redundant of evidence already received and considered by VA, as such contentions were made prior to the November 2006 denial. Therefore, the Veteran's service connection claim may not be reopened based upon his allegations of a nexus between service, and herbicide exposure therein, and his current chronic obstructive pulmonary disease. 

In the absence of new and material evidence, the Veteran's service connection claim for chronic obstructive pulmonary disease may not be reopened. 


III. Service connection

The Veteran seeks service connection for tinnitus, and for benign prostatic hypertrophy. Service connection may be awarded for a current disability arising from a disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. §§ 3.303, 3.304. Service connection may also be awarded for certain disabilities, such as organic diseases of the nervous system, which manifest to a compensable degree within a year of service separation. 38 U.S.C.A. §§ 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. As with any claim, when there is an approximate balance of positive and negative evidence regarding any matter material to the claim, the claimant shall be given the benefit of the doubt. 38 U.S.C.A. § 5107. 

Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a) .

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third elements is through a demonstration of continuity of symptomatology. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). A claimant can establish continuity of symptomatology with competent evidence showing: (1) that a condition was "noted" during service; (2) post-service continuity of the same symptomatology; and (3) a nexus between a current disability and the post-service symptomatology. Savage v. Gober, 10 Vet. App. 488, 495-96 (1997); 38 C.F.R. § 3.303(b). Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

The Board also notes that the Veteran has been awarded the Combat Infantryman's Badge, indicative of combat participation. Pursuant to 38 U.S.C.A. § 1154(b), with respect to combat veterans, 

"[VA] shall accept as sufficient proof of service- connection . . . satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions and hardships of such service . . . Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary." See also 38 C.F.R. § 3.304(d). 

38 U.S.C.A. § 1154(b), however, can be used only to provide a factual basis upon which a determination could be made that a particular disease or injury was incurred or aggravated in service, not to link the claimed disorder etiologically to a current disorder. See Libertine v. Brown, 9 Vet. App. 521, 522- 23 (1996). 38 U.S.C.A. § 1154(b) does not establish service connection for a combat veteran; it aids him or her by relaxing the adjudicative evidentiary requirements for determining what happened in service. See Wade v. West, 11 Vet. App. 302, 305 (1998) (holding that "a combat veteran who has successfully established the in-service occurrence or aggravation of an injury pursuant to § 1154(b), must still submit sufficient evidence of a causal nexus between that in-service event and his or her current disability"). A claimant must still generally establish the claim by competent evidence tending to show a current disability and a nexus between that disability and those service events. 

The Veteran's service records also confirm his service in Vietnam. According to 38 C.F.R. § 3.307(a)(6)(iii), a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the Vietnam era shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. Service in Vietnam includes service in the waters offshore or service in other locations if the conditions of service involved duty or visitation in Vietnam. 38 C.F.R. § 3.313(a). 

If the Veteran was exposed to an herbicide agent during service, certain enumerated diseases shall be service connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there was no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied. Among these enumerated disorders is prostate cancer. The availability of presumptive service connection for a disability based on exposure to herbicides does not, however, preclude a Veteran from establishing service connection for a non-enumerated disease with proof of direct causation. Stefl v. Nicholson, 21 Vet. App. 120 (2007); see also Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). 

a. Tinnitus

The Veteran seeks service connection for tinnitus. 

The Veteran's service treatment records are negative for any diagnosis of or treatment for tinnitus. On his March 1970 report of medical history, he denied any history of hearing loss or ear, nose, or throat problems. Likewise, no abnormalities of the ears were noted on his March 1970 service separation examination. The ears and drums were reported as normal. 

In October 2006, the Veteran was afforded a VA audiological examination. His claims file was reviewed in conjunction with the examination. He gave a history of exposure to artillery, rifle, and mortar fire, as well as bombs, during service. Post-service, he worked as a truck driver for approximately 30 years. Upon audiometric testing, a current diagnosis of hearing loss bilaterally was confirmed. He reported a history of a sound like "crickets" in his ears which started 5-6 years ago. A diagnosis of tinnitus was confirmed. After review of the claims file and examination of the Veteran, the VA audiologist stated that the Veteran's tinnitus was not related to his service, as no shift in hearing was noted from service entrance to service separation, and the Veteran reported onset of his tinnitus many years thereafter. Subsequent VA outpatient treatment records confirm a current diagnosis of tinnitus. 

In his February 2009 VA Form 9, the Veteran stated he has had bilateral tinnitus since military service. 

After considering the totality of the record, the Board finds the preponderance of the evidence to be against the claim of service connection for tinnitus. The October 2006 VA examination provides an adequate basis on which to decide the claim. The examiner reviewed the claims file, noted relevant service and post-service noise exposure, and explained the reasons for her conclusion based on her interpretation of the data, including normal hearing at separation. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning). The examiner noted the Veteran's report of onset of his tinnitus many years after service, and determined his tinnitus was unrelated to service. 

The Board also finds that the evidence reflects a lack of onset of tinnitus in service, or for many years thereafter. The Veteran did not seek treatment for, and was not diagnosed with, a hearing loss disability or tinnitus at any time during service or at separation. As was noted above, the Veteran has confirmed participation in combat; thus, the presumptions of 38 U.S.C.A. § 1154(b) apply. Nevertheless, while the Board concedes that the Veteran may have experienced tinnitus following combat service, and he is competent to report as such, he did not report or seek treatment for such a disorder at any time during service following his combat participation. Furthermore, he indicated on the separation medical report of history that he did not have and had never had ear trouble or hearing loss. In fact, his ears and drums were reported as normal. He also did not seek treatment for hearing loss or tinnitus for many years after service. This lengthy period without complaint or treatment is evidence that there has not been a continuity of symptomatology, and weighs heavily against the claim. See Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000). In the present case, however, the record does not reflect silence on the issue of tinnitus, it reflects affirmative denial of pertinent pathology at service separation. Additionally, while the Veteran has more recently stated in 2009 that he has experienced tinnitus since service, he stated in 2006 that he had experienced this disorder only for the last 5-6 years. Consequently, the Board concludes that the Veteran's statements indicating definitive onset of tinnitus in service and continuity of symptomatology thereafter are not credible, as they are inconsistent with his own prior statements. 

As the preponderance of the evidence indicates that tinnitus did not manifest in service or for many years thereafter, and this disability is not otherwise related to service, the claim for entitlement to service connection for tinnitus must be denied. The benefit-of-the-doubt doctrine is therefore not for application, and the claims for service connection for bilateral hearing loss disability and tinnitus must be denied.

b. Benign prostatic hypertrophy

The Veteran seeks service connection for benign prostatic hypertrophy, to include as secondary to herbicide exposure during service. 

The Veteran's service treatment records are negative for any diagnosis of or treatment for a prostate disorder. His March 1970 service separation examination was negative for any abnormality of the genitourinary system, and on his concurrent report of medical history, he denied any genitourinary symptoms. 

More recently, the Veteran has been seen by VA for genitourinary complaints. In 2006, he was noted to have an enlarged prostate. He has also complained of nocturia, incomplete emptying on urination, and intermittent suprapubic pain with a full bladder. An assessment of lower urinary tract symptoms was provided in 2009. No examiner indicated, however, that these disorders began during service or were related to herbicide exposure therein. 

After considering the totality of the record, the Board finds the preponderance of the evidence to be against the claim of service connection for benign prostatic hypertrophy. In this regard, service treatment records are silent for any complaints or treatment relative to the prostate, the separation examination was normal, and the Veteran did not seek treatment for a prostate disorder for many years thereafter. This lengthy period without complaint or treatment is evidence that there has not been a continuity of symptomatology, and weighs heavily against the claim. See Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000). Moreover, there is no competent evidence in the record that attributes benign prostate hypertrophy or any related prostate disorder to service. Under the circumstances, the Board thus finds that service connection for benign prostate hypertrophy is not warranted on a direct basis. See 38 U.S.C.A. §§ 1110, 1131, 38 C.F.R. § 3.303. 

The Veteran also asserts that benign prostate hypertrophy is secondary to herbicide exposure. As noted above, certain presumptions are granted for Veterans who were exposed to the herbicide Agent Orange during service in Vietnam. Benign prostatic hypertrophy is not, however, among the conditions for which presumptive service connection is available based on herbicide exposure. See 38 C.F.R. §§ 3.307, 3.309 (e). The Veteran has also not presented competent evidence suggesting such a nexus, though he is not precluded from doing so under the law. See Combee, 34 F.3d at 1042. 

The Veteran has himself alleged that his benign prostatic hypertrophy is etiologically related to herbicide exposure in service. The Board does not find him competent to testify regarding the etiological basis of his prostate disorder, as this question is of the type that the courts have found to be beyond the competence of lay witnesses. Lay statements may be competent to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). Some medical issues, however, require specialized training for a determination as to diagnosis and causation, and such issues are therefore not susceptible of lay opinions on etiology, and the Veteran's statements therein cannot be accepted as competent medical evidence. See Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) ("It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant"); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377, n. 4 ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"). Lay testimony is not competent in the present case, because the Veteran is not competent to state that his prostate disorder is related to herbicide exposure, or any other incident or injury, of service. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Kahana v. Shinseki, 24 Vet. App. 428, 433, n. 4 (2011) (lay witnesses are competent to opine as to some matters of diagnosis and etiology, and the Board must determine on a case by case basis whether a veteran's particular disability is the type of disability for which lay evidence is competent). 

In conclusion, the preponderance of the evidence is against the award of service connection for benign prostatic hypertrophy. As a preponderance of the evidence is against the award of service connection, the benefit of the doubt doctrine is not applicable in the instant appeal. 



ORDER

The application to reopen the service connection claim for a bilateral hearing loss disability is denied. 

The application to reopen the service connection claim for chronic obstructive pulmonary disease is denied. 

Entitlement to service connection for tinnitus is denied. 

Entitlement to service connection for benign prostatic hypertrophy is denied. 



____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs